No. 48,174

STATE OF KANSAS, *Appellee*, v. CLETIS L. CROWLEY, *Appellant*.

(552 P. 2d 971)

Opinion filed July 23, 1976.

*Richard L. Hilton,* of Wichita, argued the cause and was on the brief for the appellant.

*Stephen E. Robison,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Appellant Cletis L. Crowley was charged with the offense of possession of heroin (K. S. A. 1975 Supp. 65-4127a.). After a fourth jury trial he was convicted and sentenced and he now appeals.

The prosecution evidence revealed the following. On September 27, 1973, Detective Fulton of the Wichita police department was advised by a confidential informant that heroin was being sold at a house located in the 1800 block on North Kansas street in Wichita. The informant was unable to give the exact address of the house but stated a Cadillac bearing California license plates would be parked at the house where the heroin allegedly was being sold. Detective Fulton and Detective Ralston drove an unmarked police car to the area about 11:15 p.m. of that day. In the middle of the 1800 block they saw a Cadillac with California plates backed into a driveway. Parked in front of the Cadillac was a green Oldsmobile.

As Fulton drove by the parked vehicles he saw one person in the driver's seat of the Oldsmobile and at least one person standing in the yard. He stopped the unmarked police car in the next block and the two officers commenced surveillance of the area. A few minutes later they saw the Oldsmobile pull out of the driveway and come south down Kansas toward them. Fulton saw only one person in the car as it went by. Shortly thereafter the Oldsmobile slowed down, veered toward the curb, then straightened out and continued on. The detectives turned around and began following the Oldsmobile. The officers activated red lights and a siren. A high speed chase through the streets ensued. Another officer who had been in radio contact with the two detectives established a road block, which the driver of the Oldsmobile maneuvered through. This officer identified the driver as appellant Crowley. Appellant suddenly stopped the Oldsmobile, got out of it and ran. Detective Ralston saw him throw a plastic bag across the street. Ralston retrieved the bag and with Fulton chased appellant on foot and captured him. Inside the plastic bag were twelve balloons. Laboratory analysis revealed each balloon contained heroin.

Appellant testified he had met Anthony Mathenia, owner of the Oldsmobile, on the night in question. They attempted to locate Milton Butler, who owned the Cadillac parked at the house on North Kansas. Appellant and Mathenia arrived at the house about

11:10 p. m. Appellant did not get out of the car because he sensed an unmarked police car in the area. Mathenia and Butler talked with each other in the front yard. Appellant protested he wanted to go home. Mathenia let him drive the automobile but Butler went along in order to bring the car back. As appellant drove south toward 16th street he pulled over to the west curb and Butler rolled out of the car. Appellant continued on. As appellant was trying to get the car door solidly closed he noticed the plastic bag between the seat and the door and at the same time noticed the police in pursuit. Appellant testified that he panicked, he tried to evade the police because he needed time to think and then he tried to dispose of the bag when he stopped. He contended throughout that the heroin was not his—inferring it belonged to Butler or Mathenia—he had not known it was there and never intended to possess it. He was then on parole which he feared might be revoked if heroin were found in his possession.

Appellant's first contention is that bringing him to jury trial a fourth time constituted double jeopardy and cruel and unusual punishment in violation of his constitutional rights. Appellant's first trial ended when the trial court declared a mistrial because the jury was unable to reach a verdict. At his second trial the prosecution, without laying a proper foundation, presented evidence of appellant's prior conviction of possession of heroin. Upon appellant's motion the trial court declared a mistrial because of this error. During the third trial after the jury had been deliberating some time it announced it was hopelessly deadlocked. A poll of the individual members in open court confirmed this fact. Both the state and appellant requested that the jury be sent back for further deliberations. The trial court complied with these requests. After deliberating further for one day plus two hours and still announcing itself as hopelessly deadlocked and unable to agree on a verdict, the jury was discharged and a mistrial declared.

Appellant's complaints are bottomed on the fact he did not consent to the order declaring mistrial in the third trial. Consent by a defendant to an order declaring a mistrial is not essential so as to avoid the defense of former jeopardy where mistrial is properly ordered as here. A trial court may declare a mistrial when it finds the jury is unable to agree on a verdict (K. S. A. 22-3423 [1] [d]). Determination of the length of time a jury should be kept together and the probability of agreement of the jurors upon a verdict rests

within the sound discretion of the trial court under the facts and circumstances of the particular case (*State v. Blockyou*, 195 Kan. 405, 407 P. 2d 519). Our rules relating to former jeopardy are now contained in K. S. A. 21-3108 (*State v. McKay*, 217 Kan. 11, 535 P. 2d 945). So far as material here that statute provides that a prosecution is barred if the defendant was formerly prosecuted for the same crime on the same facts if the former prosecution was terminated without the consent of the defendant after he was placed in jeopardy, except where the termination occurred because it was impossible for the jury to agree on a verdict. The exception applies here. After first announcing it was hopelessly deadlocked the jury was required to deliberate further for more than one day, at which time it announced itself as still unable to agree on a verdict and hopelessly deadlocked. Under these circumstances the trial judge did not abuse sound discretion in declaring a mistrial. Appellant's first trial was in February, 1974. His last trial commenced July 22, 1974. Each of the four trials was conducted according to law. These actions by the state did not constitute the infliction of cruel and unusual punishment in violation of the federal or state constitutions.

Appellant asserts the trial court should have declared a mistrial in several instances, as requested, because of various improprieties. One was eliciting, over objection, upon cross-examination of appellant's witness Mathenia, of the fact the witness had been convicted of burglary and larceny upon two occasions and of burglary upon another. Burglary and larceny are crimes involving dishonesty and conviction of these offenses may be shown for the purpose of impairing the credibility of a witness (*State v. Price*, 215 Kan. 718, 529 P. 2d 85). The intent with which the burglary in the third conviction was committed is not shown in the record. That conviction therefore may or may not have evinced dishonesty. If it did not it was improperly admitted (K. S. A. 60-421). However, if there was error in this regard it was, under the circumstances, nonprejudicial. Similarly, it was of no consequence that the state elicited from the witness Mathenia the fact he was then a resident of the county jail.

Appellant also complains of the following which occurred during the state's cross-examination of Mathenia:

"Q. Sir, have you ever had any background with drugs?

"MR. HILTON: To which I object as being incompetent, irrelevant, and immaterial.

"THE COURT: The objection to the last question is sustained.

"MR. RUMSEY: Your Honor, I know that he has."

Drug offenses *per se* do not involve dishonesty or false statement in their commission; hence K. S. A. 60-421 renders convictions for those offenses inadmissible for the purpose of impairing the credibility of a witness (*State v. Belote,* 213 Kan. 291, 516 P. 2d 159). The question put to the witness was improper and the trial court sustained the objection. That should have been the end of the matter. A lawyer should not under the guise of being carried away in the heat of combat, attempt to place improper matter before a jury. The prosecutor's comment was improper.

Misconduct on the part of the prosecutor in making unwarranted comments and going outside the record may be so gross and flagrant as to deny an accused a fair trial and require reversal (*State v. Murrell,* 215 Kan. 10, 523 P. 2d 348; *State v. Kelley,* 209 Kan. 699, 498 P. 2d 87). We do not think the impropriety here extended so far. The trial judge did admonish the jury to disregard the prosecutor's remark. Moreover, the remark itself may be deemed nonprejudicial in view of the fact appellant was disclaiming ownership of the heroin and instead was asserting it belonged either to Butler or Mathenia. Thus viewed the remark was consistent with appellant's defense and harmless to him.

Appellant also complains of a prosecution question put on cross-examination of Detective Bullins when the latter was called as a defense witness, as to whether appellant's name had ever come up in a conversation with one Chester Burney (also a defense witness) in connection with drug traffic. Appellant's objection to this question was promptly sustained and no answers were given. The question only peripherally concerned appellant at best and no prejudice to him ensued.

Appellant asserts hearsay evidence was improperly admitted. Essentially the attack is against testimony by Detectives Fulton and Ralston that as a result of information given by a confidential informant they went to the 1800 block on North Kansas to investigate the possible sale of heroin. There was no objection to Fulton's testimony, who testified first, but that of Ralston, who simply repeated what Fulton had said, was objected to. K. S. A. 60-460 provides that evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible with certain exceptions. Testimony is not inadmissible as hearsay evidence when

it is not offered to prove the truth of the matter asserted. The testimony of neither detective was offered to prove the truth of the informant's statement that heroin was being sold at the location in question but only to show the reason for their presence there that night and as such it was admissible (*State v. Trotter*, 203 Kan. 31, 453 P. 2d 93).

Appellant complains he was twice improperly restricted during his cross-examination of Detective Fulton in an effort to test credibility. The first went to the detective's testimony that he could see there was only one person in the Oldsmobile as it drove by the unmarked police car, although it was dark and the Oldsmobile traveled directly toward the police car with its lights on. After numerous questions concerning the lighting conditions and Fulton's ability to see inside the Oldsmobile appellant's counsel challenged the witness to a demonstration to be held at the particular place under similar conditions to determine whether Fulton could tell how many people were inside cars as they passed. The state's objection to this question was sustained. This does not amount to prejudicial limitation of cross-examination as argued by appellant. He had ample opportunity, of which he took advantage, to cross-examine Fulton on this aspect. As stated in *State v. Parker*, 213 Kan. 229, 516 P. 2d 153:

"The discretion of a trial court extends to permitting, restricting, or refusing to allow a protracted cross-examination of a witness covering ground which is useless, irrelevant or previously covered. The extent of cross-examination is a matter generally within the discretion of the trial court and in the absence of a clear abuse of that discretion no prejudicial error results from the exercise of that discretion." (p. 231.)

Appellant also complains he was not permitted upon Detective Fulton's cross-examination to elicit the fact that after appellant was arrested, Fulton returned to the Oldsmobile and searched it and in doing so discovered marihuana seed and leaf fragments in between the cracks in the seat of the car. On the basis of this evidence appellant was initially charged with possession of marihuana. This charge was later dropped and formed no part of the trial of this case. Appellant's theory is that Fulton's actions which resulted in the bringing of the marihuana charge against appellant, even though Fulton knew the Oldsmobile belonged to Mathenia, demonstrated Fulton was biased as a witness and would go any length to obtain a conviction. We cannot declare abuse of discretion in the court's ruling foreclosing this examination. The marihuana

charge had been dropped and evidence respecting it became irrelevant to any issue remaining in the case. Detective Fulton merely collected evidence from the car and it was up to the district attorney as to whether charges on that evidence should be filed and pursued.

Appellant further complains he was improperly limited in his cross-examination of the police laboratory expert, Kenneth C. Knight, Jr., whose testimony identified the substance in the balloons as heroin, in that he was not permitted to develop the fact another person in the police laboratory had incorrectly identified milk sugar as methadone. Knight did testify at great length about the procedure he used to identify the heroin in this case, the tests he employed and the possibility of error. Appellant had ample opportunity to cross-examine. It was irrelevant that another person in the lab had, in unrelated cases, misidentified unrelated substances.

Appellant contends a statement made by him while in police custody was improperly admitted. The statement was made while appellant was being escorted to a police detention center by the officer who had established the roadblock, and is seen in the following:

"A. The vehicle which he was driving kept missing out and dying; and it approximately reached the river bridge at Maple and McLean Boulevard. I stated to the defendant that I was surprised we ever caught him driving a car like this.

"MR. HILTON: May it please the Court: At this time, I interject an objection of any conversation with this Officer and the defendant until a proper foundation has been laid.

.     .     .     .     .     .     .     .     .     .     .     .     .

"Q. (By Mr. Rumsey) What if any reply did the defendant make to your comment about—

"A. The defendant then stated, he said, 'You never would have caught me if I hadn't *drive* such a raggedy, old-shaped car.' "

Appellant does not elaborate the basis for his objection, which was overruled, other than the fact an out-of-court *Jackson-Denno* type hearing was not held prior to receipt of the statement to determine its voluntariness. No such hearing was requested nor was it necessary. Prior to the time of the conversation in question appellant had been given a *Miranda* warning. Assuming the statement was in some manner incriminating, it was in the nature of a spontaneous exclamation by appellant and not the product of interrogation. In *State v. Denney*, 206 Kan. 511, 479 P. 2d 820, the defendant was apprehended near a store which had been burglarized.

The county sheriff, who had made defendant's arrest, testified the defendant stated to him, without any questioning or advice of rights, that he had broken into the store. Complaint was made upon appeal of the admission of this statement into evidence without a prior determination of its voluntariness. In holding no error was committed this court pointed out the statement was volunteered (see also *State v. Law*, 203 Kan. 89, 452 P. 2d 862).

Also, appellant himself testified as to the making of the statement in question, its circumstances and what he meant by it. In this testimony there was no contention or indication of any kind that the statement was involuntary or the result of any coercion or interrogation. Nothing prejudicial resulted from the admission of this testimony.

During the state's case in chief evidence of appellant's prior conviction for possession of heroin was received over his objection following an out-of-court hearing. The circumstances of this conviction were shown: A detective entered a motel room in Wichita where he found tinfoil packets of heroin on a table; appellant and a companion were in the room; appellant disclaimed ownership of the heroin packages and stated they belonged to a person called "L. D.", whose last name he did not know. The conviction was offered and received for its relevance on appellant's intent, knowledge and absence of mistake or accident, and the jury was instructed accordingly. Appellant, without any argument whatever, reasserts error in all this.

The state points out, and we think properly so, that appellant's intent in his admitted handling of the heroin, was a crucial issue in the case. Where an act in itself may be susceptible to two interpretations, one innocent and the other criminal, then the intent with which the act is done becomes the critical element in determining its character (*State v. Nading*, 214 Kan. 249, 519 P. 2d 714). In his opening statement, made immediately after that of the prosecution, appellant put the matter on his intent in issue—he did not know the heroin was in the car until he saw the police; he merely made an error in judgment in attempting to escape and his constructive possession of the heroin was mistaken and without knowledge or criminal intent.

One test which has sometimes been employed in determining relevancy of a prior conviction under K. S. A. 60-455 is that of similarity to the instant charge. Points of similarity do exist here:

Each offense was the possession of heroin in numerous small packages; each involved constructive possession; in each appellant contended the heroin belonged to someone else and the other person could not be located. Under this test the previous conviction was properly received. Aside from this, in our recent case of *State v. Faulkner,* 220 Kan. 153, 551 P. 2d 1247, a drug case involving facts analogous to those here, we permitted evidence of a previous drug conviction to be received on the issue of intent, without any proof of the facts and circumstances of the previous conviction. We think the evidence was admissible here. The trial court properly instructed the jury as to how the conviction should be considered.

Finally, appellant complains, again without argument, that the trial court did not adequately instruct on the requisite element of intent to possess the heroin. The complaint has no merit. The instructions, which were taken substantially from PIK Criminal § 67.01, p. 388, recited that to establish the charge it would have to be proven that appellant *wilfully* possessed the heroin. K. S. A. 21-3201 (2) provides:

"(2) Willful conduct is conduct that is purposeful and intentional and not accidental. As used in this code, the terms 'knowing,' 'intentional,' 'purposeful,' and 'on purpose' are included within the term 'willful.'"

This court has recognized the interchangeability of these terms in connection with instructions on criminal intent (*State v. Lassley,* 218 Kan. 752, 545 P. 2d 379) and has repeatedly held that the propriety of instructions is to be gauged by their consideration as a whole, each in conjunction with all other instructions in the case. Here, the trial court also instructed the jury on the concept of possession of a narcotic:

"A person is in possession of a narcotic when he has the narcotic under his control or has the right to exercise control over it. The narcotic may be carried on the person or be in his presence and in his custody. The control or right to exercise control may be jointly shared by two or more persons."

The jury was adequately instructed on the element of intent. The judgment is affirmed.

APPROVED BY THE COURT.