NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAYMOND HAROLD HANLEY, *Appellant.*

No. 1 CA-CR 17-0737
FILED 12-6-2018

Appeal from the Superior Court in Maricopa County
No.  CR2016-002298-001
The Honorable Alfred M. Fenzel, Judge, (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence S. Matthew
*Counsel for Appellant*

**MEMORANDUM DECISION**

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Acting Presiding Judge Maria Elena Cruz and Judge Randall M. Howe joined.

**T H U M M A**, Chief Judge:

¶1          Defendant Raymond Hanley appeals from his convictions and sentences for first degree murder, a Class 1 dangerous felony, and kidnapping, a Class 2 dangerous felony. Hanley argues the superior court erred in admitting evidence of his other acts pursuant to Arizona Rules of Evidence 404(b) and (c). Because Hanley has shown no reversible error, his convictions and resulting sentences are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2          Responding to an apartment fire in October 1993, the Mesa Fire Department found inside one unit the body of D.S., who had suffered multiple gunshot wounds. D.S. was wearing only a t-shirt, and zip ties bound her wrists and ankles. Her legs were also bound just below the knee and a cord connected the wrist and ankle bindings. Although the murder went unsolved at the time, years later, DNA evidence taken from the scene matched Hanley. As relevant here, in 2016, a grand jury indicted Hanley for first degree murder and kidnapping.[1]

¶3          Hanley claimed someone else committed the offenses and agreed "that [the] identity [of the perpetrator] was at issue in this trial." Before trial, the State moved to admit evidence of (1) Hanley's prior conviction for a February 1994 sexual assault of C.S., including his use of restraints, and (2) Hanley's use of restraints during sexual conduct with B.H., his wife at the time of the murder. The State sought admission of the

---

[1] The superior court granted Hanley's motion to remand to the grand jury, resulting in a subsequent indictment alleging first degree murder (including sexual assault as a predicate offense), kidnapping, burglary and arson of an occupied structure. Hanley was convicted of all four charges but does not challenge here his convictions or sentences for burglary and arson of an occupied structure.

evidence under Arizona Rule of Evidence 404(b) to show "modus operandi," "pattern and characteristics" that are "so unusual and distinctive as to be like a signature," *State v. Prion*, 203 Ariz. 157, 163 ¶ 38 (2002) (citation omitted), and under Rule 404(c) to "show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit" sexual assault, a predicate for the felony murder charge. *See* Ariz. R. Evid. 404(b) & (c) (2018).[2]

**¶4** At a pretrial evidentiary hearing, psychologist Dr. Tina Garby testified about the similarities and differences between the other acts and the murder. Dr. Garby testified that "the behaviors of bondage appear[ed] to be similar enough that the same person could have done them," and that the person performing the acts of bondage was "likely to be somebody who has an interest in sexual sadism." Mesa Police Department Detective Brown also testified about her discussions with B.H. and Hanley on the topic.

**¶5** After the evidentiary hearing, in an eight-page minute entry, the superior court granted the State's motion. The court found that the State had proven the conduct by clear and convincing evidence; that the conduct "was sufficiently unique as to be like a signature in its nature," *see* Ariz. R. Evid. 404(b), and that "the commission of these acts provide[d] a reasonable basis to infer that [Hanley] had a character trait giving rise to an aberrant sexual propensity to commit the crimes charged," *see* Ariz. R. Evid. 404(c). The court found that the probative value of the evidence "far outweighs the risk of prejudice."

**¶6** At trial, B.H., C.S. and Detective Brown testified about the other acts. The jury also heard excerpts of recorded interviews of Hanley that briefly addressed the other acts.

**¶7** After a 12-day trial, the jury found Hanley guilty of first degree murder and kidnapping and then found the State had proven aggravating circumstances. The court imposed a sentence of life in prison with possibility of release after 25 years for the murder conviction and a concurrent term of 10.5 years in prison for kidnapping. This court has jurisdiction over Hanley's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and 13-4033(A)(1).

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## DISCUSSION

### I. Admission Of Other Act Evidence Is Reviewed For An Abuse Of Discretion, Viewing The Evidence In The Light Most Favorable To The Proponent.

**¶8** On appeal, this court reviews a superior court's "decision to admit evidence of other acts for an abuse of discretion," *State v. Hausner*, 230 Ariz. 60, 78 ¶ 68 (2012), recognizing an admissibility "ruling will not be disturbed absent a clear abuse of that discretion," *State v. Kiper*, 181 Ariz. 62, 65 (App. 1994). The State asks this court to "look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." *Kiper*, 181 Ariz. at 66. Hanley responds that, for other acts evidence, "the rules have a different thrust, and the suppositional balance no longer tilts toward admission." *State v. Salazar*, 181 Ariz. 87, 91 (App. 1994). This, Hanley suggests, requires a different rule for appellate review of decisions admitting other act evidence.

**¶9** Contrary to Hanley's suggestion, *Salazar's* direction to superior courts, 181 Ariz. at 91, does not change or conflict with *Kiper*'s direction to appellate courts, 181 Ariz. at 66. The two decisions focus on different issues. *Salazar* focuses on how the superior court should resolve admissibility, while *Kiper* focuses on how this court, on appeal, should review the superior court's admission of other act evidence. Because *Kiper* provides the relevant analysis here, this court views the evidence "in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." *Kiper*, 181 Ariz. at 66.

### II. The Court Properly Admitted Evidence Of The February 1994 Sexual Assault Under Rules 404(B) And (C), And Evidence Of Marital Acts Between Hanley And B.H. Under Rule 404(C).

**¶10** In general, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Ariz. R. Evid. 404(a); *accord* Ariz. R. Evid. 404(b). Hanley claims the superior court erred in applying two exceptions to this general rule by admitting other act evidence (1) under Rule 404(b), for the limited purpose of showing Hanley's modus operandi, and (2) under 404(c), to show that Hanley "had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Although the relevance inquiry is similar, because the "proper consideration and use by the jury of" other acts evidence "differs significantly depending upon" whether it is admitted under Rule 404(b) or 404(c), *State v. Scott*, 243 Ariz. 183, 188 n.3 (App. 2017), this court addresses 404(b) and 404(c) in turn.

### A.     The Other Acts Evidence Was Relevant.

**¶11**          "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Ariz. R. Evid. 401. This "standard of relevance is not particularly high." *State v. Rose*, 231 Ariz. 500, 512 ¶ 52 (2013) (citation omitted). Hanley's use of bondage in the sexual assault and with his wife during sexual conduct demonstrated his preference for the use of restraints in such encounters; D.S. was similarly restrained at the time of death and was naked, other than wearing a shirt, suggestive of a sexual encounter. Accordingly, the evidence was relevant. *See* Ariz. R. Evid. 401; *accord State v. Goudeau*, 239 Ariz. 421, 446 ¶ 66 (2016) ("[B]ecause identity was the only disputed issue at trial, the court did not err by finding the other-act evidence relevant.").[3]

### B.     The Superior Court Properly Admitted The Other Acts Evidence Under Rule 404(C).

**¶12**          In an evidentiary rule unique to Arizona, "[i]n a criminal case in which a defendant is charged with having committed a sexual offense, . . . evidence of other . . . acts may be admitted by the court if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c).[4] As applicable here, three things are required for the proper admission of other act evidence under Rule 404(c):

> *First,* the trial court must determine that clear and convincing evidence supports a finding that the defendant committed the other act. *Second,* the court must find that the commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to

---

[3] Hanley's argument to the contrary is based on one case addressing different issues. *See State v. Ramirez Enriquez*, 153 Ariz. 431, 432 (App. 1987) (reversing sale of marijuana conviction; criticizing admission of evidence, to "complete[] the story, " of other times when defendant sold marijuana where a limiting instruction was "incomprehensible").

[4] Federal Rule of Evidence 413 ("Similar Crimes in Sexual-Assault Cases") addresses a similar topic but does so in a different manner.

> commit the charged sexual offense. ***Third,*** the court must find that the evidentiary value of proof of the other act is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other factors mentioned in Rule 403 [as well as eight factors listed in Rule 404(c), "among others"].

*State v. Aguilar*, 209 Ariz. 40, 49 ¶ 30 (2004) (emphasis added; citations omitted).[5] Applying these 404(c) standards, Hanley has shown no error in the superior court's admission of the other acts evidence in this case.

### 1. Hanley Has Not Shown That The Superior Court Abused Its Discretion In Concluding The Other Acts Provided A Reasonable Basis To Infer That He Had A Character Trait Giving Rise To An Aberrant Sexual Propensity To Commit Sexual Assault.

#### a. Hanley's February 1994 Sexual Assault Of C.S.

**¶13** Hanley concedes that clear and convincing evidence showed that he was convicted of sexually assaulting C.S. in February 1994. Hanley asserts, however, that there were "virtually no similarities" to support the finding that his sexual assault of C.S. "provides a reasonable basis to infer that [he] had a character trait giving rise to an aberrant sexual propensity to" sexually assault D.S. Ariz. R. Evid. 404(c)(1)(B).

**¶14** It is undisputed that Rule 404(c) "does not contemplate any bright line test of remoteness or similarity, which are solely factors to be considered." Rule 404 cmt. to 1997 amendment. Indeed, Rule 404(b) authorizes the admission of other acts evidence "providing there is a 'reasonable' basis, by way of expert testimony or otherwise, . . . [to show] that the commission of the other act permits an inference that defendant had an aberrant sexual propensity that makes it more probable that he or she committed the sexual offense charged." Rule 404 cmt. to 1997 amendment; *see also State v. Benson*, 232 Ariz. 452, 459 ¶ 14 (2013) (noting "attacks did not have to precisely align" to be admissible). Hanley argues,

---

[5] Although the court also must "make specific findings with respect to each of the" Rule's prerequisites for admission and "instruct the jury as to the proper use of such evidence," *see* Ariz. R. Evid. 404(c)(1) & (2), Hanley does not challenge those requirements on appeal, and the record presented shows the court properly undertook those obligations.

however, there were only "an extremely small number of generic similarities," meaning the superior court erred in finding the evidence admissible under Rule 404(c)(1)(B).

**¶15** Given the closeness in time of the February 1994 sexual assault and the October 1993 murder, the similarities between the use of restraints in each, and Dr. Garby's testimony, the superior court properly found the requisite basis to support propensity. Testimony at the evidentiary hearing revealed that both victims were adult women; restraints bound each at the wrists, ankles, and between the ankle and knee; both women appeared to have been undressed by someone else; and violence was used or threatened on both occasions. Dr. Garby concluded that "if the same individual engaged in these behaviors, then this person is likely to be somebody who has an interest in sexual sadism." The court found Dr. Garby's testimony "logical, well-reasoned and persuasive."

**¶16** Dr. Garby likewise discussed and explained many of the differences Hanley highlights on appeal, concluding "that, if somebody was engaging in those behaviors and did these things, that they still may be very likely to have a sexual sadistic interest." The superior court weighed the differences and found them to be "less consequential." On this record, Hanley has shown no abuse of discretion in the court's admission of the sexual assault evidence under Rule 404(c). *See, e.g., State v. Lehr*, 227 Ariz. 140, 147 ¶ 21 (2011) (noting "[a]cts need not be perfectly similar in order for evidence of them to be admitted under Rule 404."); *State v. Dixon*, 226 Ariz. 545, 550 ¶ 15 (2011) (noting similarities of victims; that "[i]n each case, a knife was used, the victim was restrained, and homicide was either threatened or occurred" and expert testimony that the defendant "had an aberrant propensity to commit sexual assault," and concluding "the trial court's propensity determination was appropriate"); *Benson*, 232 Ariz. at 458-59 ¶ 14 (noting other acts that "bore several similarities" to the charged offense "provided a reasonable basis for the court to infer that [defendant's] aberrant sexual propensities in each attack were probative on the charges involving all victims").

### b. Hanley's Use Of Restraints On B.H. At The Time Of The Murder.

**¶17** Hanley has likewise failed to show the superior court abused its discretion in admitting evidence of bondage within his marriage under Rule 404(c). Although Hanley argues his acts with B.H. were consensual, testimony at the evidentiary hearing included information to the contrary. Regardless, B.H. testified (and Hanley admitted in interviews) that the

couple engaged in bondage. *See State v. Vega*, 228 Ariz. 24, 29 ¶ 19 & n.4 (App. 2011) (holding "victim's in-person testimony satisfied the clear-and-convincing requirement of Rule 404(c)(1)(A)). Moreover, other acts need not be criminal to be admissible. *See* Ariz. R. Evid. 404(c) (providing "evidence of other crimes, wrongs, or acts may be admitted").

**¶18**　　　　To be sure, Hanley's conduct with B.H. was different than the sexual assault and the charges involving D.S., meaning the admissibility of his conduct with B.H. was a closer call. That said, on the record presented, the superior court did not abuse its discretion. Both women's hands and ankles were bound; both were either naked or nearly so; and the events occurred during the same time period. Moreover, the court credited Dr. Garby's testimony at the evidentiary hearing that emphasized the common presence of psychological—not just physical—components of "sexual sadists;" B.H. repeatedly characterized Hanley as "psychologically hurtful and controlling" and stated bondage was something she "wasn't wanting to do."

**¶19**　　　　The court found the evidence presented established a "reasonable basis to infer that [Hanley] has an aberrant sexual propensity to commit the crimes charged which involved a sadistic sexual interest in bondage and threats." It noted Hanley and B.H. engaged in the acts "at [Hanley's] insistence, for his pleasure and it involved simulated if not real pain." Taken together, this evidence supports the superior court's finding.

　　　　　　　**2.　　Hanley Has Shown No Abuse Of Discretion In Finding The Evidentiary Value Of Proof Of The Other Acts Was Not Substantially Outweighed By A Danger Of Impermissible Considerations.**

**¶20**　　　　To be admissible under Rule 404(c), the evidentiary value of other act evidence must not be substantially outweighed by a danger of the factors listed in Rule 403 or of additional factors, including "(i) remoteness of the other act; (ii) similarity or dissimilarity of the other act; (iii) the strength of the evidence that defendant committed the other act; (iv) frequency of the other acts; (v) surrounding circumstances; (vi) relevant intervening events; (vii) other similarities or differences; [and] (viii) other relevant factors." Ariz. R. Evid. 404(c)(1)(C). As is true in reviewing a challenge under Rule 403, the superior court's conclusion under Rule 404(c)(1)(C) is given substantial deference. *See State v. Gibson*, 202 Ariz. 321 ¶ 17 (2002).

¶21 The superior court's ruling considered all eight factors listed in Rule 404(c)(1)(C) and found that clear and convincing evidence of the prior acts' occurrence, as well as the closeness in time and similarity of the acts, favored admission. The court stated that "[t]he probative value far outweighs the risk of prejudice." On this record, Hanley has shown no abuse of discretion.

¶22 Hanley also argues "there can be no question that jurors were influenced by the revulsion they felt toward [him]."[6] The other acts evidence admitted at trial, however, was comparatively brief and neutral. B.H.'s direct trial testimony on the point is limited to a few transcript pages. She was then cross-examined about apparent inconsistencies in her statements on the topic, with no corresponding redirect. C.S.'s trial testimony provided more detail, describing Hanley's actions during his sexual assault, but in relevant part, was limited to approximately ten transcript pages, with no cross-examination on the point. On this record, Hanley has shown no error by the superior court in applying Rule 404(c)(1)(C).

### C. Evidence Of The February 1994 Sexual Assault of C.S. Was Admissible To Show Hanley's Modus Operandi Under Rule 404(B); Evidence Of Hanley's Use Of Restraints On B.H. At The Time Of The Murder Was Not.

¶23 Recognizing the evidentiary record supported the superior court's finding that the other acts were proved by clear and convincing evidence, to be admissible under Rule 404(b), the court was required to "(1) find that the act is offered for a proper purpose under Rule 404(b); (2) find that the prior act is relevant to prove that purpose; [and] (3) find that any probative value is not substantially outweighed by unfair prejudice." *State v. Hargrave*, 225 Ariz. 1, 8 ¶ 10 (2010) (citation omitted).[7]

---

[6] Although the typical focus is on the pre-trial evidentiary hearing to determine whether the superior court properly made an advance admissibility determination, this discussion of how the evidence came in at trial addresses Hanley's reference to the impact on the jury of this evidence.

[7] Although the court also must "give upon request an appropriate limiting instruction," *Hargrave*, 225 Ariz. at 8 ¶ 10 (quoting *State v. Anthony*, 218 Ariz. 439, 444 ¶ 33 (2008)), Hanley does not challenge the appropriate Rule 404(b) limiting instruction given by the superior court in this case.

¶24        Evidence "is not admissible to prove the character of a person in order to show action in conformity therewith," but may be admitted for "other purposes." Ariz. R. Evid. 404(b). One such proper "other purpose" is to prove the identity, or modus operandi, of the defendant. *See State v. Roscoe (Roscoe II)*, 184 Ariz. 484, 491 n.2 (1996) ("Identity and modus operandi are obviously closely related, if not identical, since an unrelated act with a significantly similar modus operandi may identify the defendant as the person who committed the crime charged.").

> The identity exception to Rule 404(b) applies if identity is in issue, "and if the behavior of the accused both on the occasion charged and on some other occasion is sufficiently distinctive, then proof that the accused was involved on the other occasion tends to prove his involvement in the crime charged."

*State v. Stuard*, 176 Ariz. 589, 597 (1993) (quoting Morris K. Udall, *Arizona Practice: Law of Evidence* § 84, at 183-84 (3d ed. 1991)). "The similarity requirement is usually more stringent where evidence of [another] . . . act is used to prove identity than where such evidence is offered to prove emotional propensity or state of mind." *State v. Roscoe (Roscoe I)*, 145 Ariz. 212, 216 (1984). "Although the details need not be identical, there must be similarities between important aspects where one would normally expect to find difference." *State v. Tankersley*, 191 Ariz. 359, 369 (1998) *abrogated on other grounds by State v. Machado*, 226 Ariz. 281, 284 ¶ 17 (2011). "Where an overwhelming number of significant similarities exist, the evidence of the prior act may be admitted." *Roscoe I*, 145 Ariz. at 216. Rather than performing a "mechanical count of the similarities," the superior court is directed to ask whether the acts are "so similar, unusual, and distinctive" that it "could reasonably find that they bear the same signature." *State v. Bible*, 175 Ariz. 549, 576 (1993). "If so, the evidence may be admissible and any dissimilarities go to its weight." *Id.*

### 1.        Hanley's February 1994 Sexual Assault of C.S.

¶25        Hanley has not shown the superior court abused its direction in admitting evidence of the sexual assault under Rule 404(b). Based on the similarities detailed above, that court could find the acts against C.S. and D.S. sufficiently "similar, unusual, and distinctive" so as to "find that they bear the same signature." *Bible*, 175 Ariz. at 576.

¶26        The superior court found the use of "handcuffs, ties and/or restraints of both the legs and arms," as well as Hanley's "holding the women in a submissive and entirely vulnerable state" sufficiently similar under Rule 404(b). Additional similarities were offered at the evidentiary hearing, including restraints in both circumstances between the victims' ankles and knees, a factor Dr. Garby emphasized as distinctive; evidence both victims had been undressed by another person; and violence used or threatened against each victim. *See State v. Perez*, 141 Ariz. 459, 464 (1984) ("We are obliged to affirm the trial court's ruling if the result was legally correct for any reason."). Although there were differences, the superior court considered those differences and deemed them "less consequential" than the similarities. *See also Goudeau*, 239 Ariz. at 451 ¶ 100 (noting such differences go to the weight to be given the evidence). Similarly, and for reasons like those above in discussing Rule 404(c)(1)(C), Hanley has shown no abuse of discretion in the court's concluding that Rule 403 did not preclude admissibility of evidence of the sexual assault for the limited purpose of showing modus operandi.

### 2.        Hanley's Use Of Restraints On B.H. At The Time Of The Murder.

¶27        Hanley argues the superior court erred in admitting, under Rule 404(b), evidence of his use of restraints on B.H. Recognizing the requirement that the other acts had to be "sufficiently unique as to be like a signature in nature," the similarities identified by the superior court were that the acts "involved the use [of] handcuffs, ties and/or restraints of both the legs and arms" that held B.H. in a "submissive and entirely vulnerable state." Unlike Hanley's sexual assault of C.S., however, no additional, unique similarities were noted in the ruling or on the record.

¶28        Although "absolute identity in every detail" is not required under Rule 404(b), as directed by prior cases, the similarities here are not sufficiently significant, "unusual, and distinctive" to support admission to show modus operandi. *See, e.g., State v. Cuen*, 153 Ariz. 382, 384 (App. 1987) ("[I]f we were to hold that the evidence of prior sexual misconduct in this case satisfies the criteria for admissibility under the . . . modus operandi exception, there would be nothing left of" the general prohibition in Rule 404(b)); *Prion*, 203 Ariz. at 164 ¶¶ 40-41 (2002) (finding 1992 murder and kidnapping/aggravated assault two years later insufficiently similar where "each involved a female victim, and a knife or knives were utilized by the perpetrator(s) at some point during commission of the crimes"); *State v. Jackson*, 124 Ariz. 202, 204-05 (1979) (finding 1976 incident insufficiently similar to three 1974 crimes where all four "occurred in the daytime, in

apartment complexes located in the same general area of Tucson" and where "the perpetrator entered a woman's unlocked apartment shortly after he had the opportunity to observe the woman enter or leave the apartment alone"); *State v. Hughes*, 189 Ariz. 62, 68-69 (1997) (finding strangulation murder and Molotov cocktail arson insufficiently similar where there were "only two likenesses—both victims were women who had angered defendant and [the same individual] may have been paid to commit the crimes"); *cf. State v. Harding*, 137 Ariz. 278, 290 (1983) (finding no abuse of discretion in admission of other act evidence for modus operandi where "the similarities of choice of victims (salesmen motel guests), peculiar method of eliminating resistance (hog-tying with clothing and gagging using socks), placement of victims (in bathroom with heads on pillows), items stolen (briefcases and clothing) and manner of departing the crime scene (via the victim's automobile) are so striking that" evidence of the other act "tends to prove the identity of the killer of the instant victims").

¶29        Because this evidence of Hanley's use of restraints on B.H. at the time of the murder failed to meet the "more stringent" similarity requirement for evidence to be admitted under Rule 404(b) for modus operandi purposes, its admission was error.

**III.    The Erroneous Admission Of Evidence Of Hanley's Use Of Restraints On B.H. Under Rule 404(B) Was Harmless.**

¶30        The State argues that any error in admitting other act evidence was harmless, while Hanley argues the "error cannot be deemed harmless," citing *State v. Anthony*, 218 Ariz. 439 (2008). Error is harmless where the State shows, "beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *Bible*, 175 Ariz. at 588. In other words, error is harmless when there is no "reasonable probability . . . that a verdict might have been different had the error not been committed." *State v. Williams*, 133 Ariz. 220, 225 (1982) (citation omitted). Here, the State has shown harmless error.

¶31        Although improperly admitted under Rule 404(b), the court properly admitted evidence of Hanley's use of restraints on B.H. under Rule 404(c). Similarly, the jury properly was instructed, as contemplated by Rule 404(c), that it could consider that evidence in determining whether Hanley "had a character trait that predisposed him to commit the crimes charged." Accordingly, although not admissible under Rule 404(b), the trial evidence properly included this same evidence under Rule 404(c), and the jury properly considered the evidence under Rule 404(c).

¶32            In addition, the other act evidence involving B.H. was brief and primarily resulted from Hanley's cross-examination of B.H. B.H. testified Hanley "liked to tie [her] up . . . maybe once a month or something like that." She testified Hanley "would tie [her] down to the bed so [she] couldn't get away," restraining on some occasions only her hands and on others both her arms and legs. B.H. noted this started "in the last couple years" of their relationship, adding she "wasn't wanting to do it." Hanley's cross-examination focused on inconsistencies in B.H.'s statements, including her admitting to purchasing the handcuffs used and stating Hanley was "kind and gentle;" never got angry while using restraints; and never bound her to anything she could not pull loose from. This brief evidence was not featured during closing arguments by counsel.

¶33            Independent of this 404(b) evidence, other trial evidence clearly demonstrated Hanley's guilt. Hanley's fingerprints were found on a gas can found in D.S.'s apartment and used as an accelerant for the fire. Hanley's DNA was found on a cigarette butt found inside D.S.'s apartment used to start the fire. Although first denying knowledge of various relevant events, Hanley later admitted to knowing D.S. and admitted to arriving at her apartment soon after the fire was spotted. He gave multiple inconsistent accounts of his involvement with D.S., and his statements about when he last spoke with her also changed over time. In addition, he volunteered details about the events that only someone involved in the offenses would know, including that D.S. had been shot. On this record, there is no reasonable probability that the verdicts would have been different had the other act evidence involving B.H. been admitted solely under Rule 404(c), and not also under Rule 404(b). *See State v. Valverde*, 220 Ariz. 582, 585 ¶ 12 (2009) *abrogated on other grounds by State v. Escalante*, 245 Ariz. 135, 140-41 ¶ 16 (2018); *State v. Van Adams*, 194 Ariz. 408, 416 ¶ 23 (1999).

¶34            Hanley's reliance on *Anthony* does not suggest a contrary result. In that capital, triple-murder case, "[a] significant portion of the trial was dedicated to evidence about the alleged molestation" by Anthony of a young step-daughter. *Anthony*, 218 Ariz. at 444 ¶ 29. Along with substantial evidence offered on the point during trial, in closing arguments, the State "asked the jury to conclude that Anthony had molested [the girl] and murdered her to cover up the molestation. The State returned to this argument and the evidence that allegedly supported it nearly a dozen times throughout its closing and rebuttal arguments." *Id.* at ¶ 31. In reversing, the Arizona Supreme Court noted the superior court "erred by applying the wrong legal standard to its evaluation of" the other act evidence, *id.* at 445 ¶ 34, that the "evidence fell far short of proving either that [the girl] was molested or that Anthony had done so," meaning it was not otherwise

13

admissible, *id.* at 445 ¶ 37, and that the State had not shown the evidence against Anthony was adequate to demonstrate harmless error, *id.* at 446 ¶¶ 41-42. None of these factors are present here.

**¶35** On this record, for these reasons, it is clear "beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *Bible*, 175 Ariz. at 588; *accord Valverde*, 220 Ariz. at 585 ¶ 12; *Van Adams*, 194 Ariz. at 416 ¶ 23. Accordingly, notwithstanding the error in admitting evidence of Hanley's use of restraints on B.H. under Rule 404(b), that error was harmless.[8]

## CONCLUSION

**¶36** Because Hanley has shown no reversible error, his convictions and resulting sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[8] For these same reasons, and because there were permissible inferences the jury could draw from this evidence under Rule 404(c), the court rejects Hanley's related due process claim. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) ("Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process."); *cf. Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).